UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

CHRISTOPHER D., )
            Plaintiff )
 )
v. ) No. 1:17-cv-00377-JHR
 )
NANCY A. BERRYHILL, )
*Acting Commissioner of Social Security,* )
 )
            Defendant )

### *MEMORANDUM DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the basis that the ALJ's residual functional capacity ("RFC") determination is unsupported by substantial evidence because she impermissibly discounted his testimony regarding the extent to which his pain limited him and failed to give adequate weight to the opinions of treating and examining physicians. *See* Plaintiff's Itemized Statement of Specific Errors and Fact Sheet ("Statement of Errors") (ECF No. 9) at [6]-[10]. I conclude that the ALJ's RFC determination is supported by substantial evidence. Accordingly, I affirm the commissioner's decision.[2]

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 18.

[2] The plaintiff also argues that the ALJ erred in failing to adopt the testimony of a vocational expert that a person who was off task 15 to 20 percent of the time or could not regularly and consistently report to work did not have a light-duty work capacity. *See* Statement of Errors at [6]. This point hinges on the success of the plaintiff's argument that the ALJ erred in determining his RFC. Because I find no such error, this point likewise is unavailing.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 404.1520; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through December 31, 2018, Finding 1, Record at 22; that he had the severe impairment of a spine disorder, Finding 3, *id.*; that he had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) in that he could lift and/or carry 20 pounds occasionally and 10 pounds frequently, sit for six hours in an eight-hour workday, and stand and/or walk for a total of at least four hours in an eight-hour workday, that he could occasionally crawl, crouch, kneel, stoop, balance, and climb, and that he could not perform constant overhead work bilaterally, Finding 5, *id.* at 24; that, considering his age (36 years old, defined as a younger individual, on his alleged disability onset date, December 17, 2013), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id.* at 32; and that he, therefore, had not been disabled from December 17, 2013, through the date of the decision, August 26, 2016, Finding 11, *id.* at 33. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. § 404.981; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 404.1520(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

### A. Assessment of Plaintiff's Statements Concerning Symptoms

The ALJ found that, although the plaintiff's "medically determinable impairment[] could reasonably be expected to cause the alleged symptoms[,]" his "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record[.]" Record at 28. Specifically, she deemed his allegations not fully supported by his treatment history or activities of daily living and "undermined by contradictory statements and facts in the record." *Id*. at 28-30.

The plaintiff contends that this analysis transgressed Social Security Ruling 96-7p ("SSR 96-7p") in that the ALJ created inconsistencies where none existed. *See* Statement of Errors at [6]-[7]. He argues that, contrary to the ALJ's findings, his activities of daily living were consistent with his subjective allegations, his statement that he had right foot drop was consistent with the underlying medical evidence of record, and his reports to various providers about the reasons his back impairment became disabling in December 2013 were consistent with one another. *See id*. at [6]-[9].

As a threshold matter, as the commissioner observes, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 15) at 2, Social Security Ruling 16-3p ("SSR 16-3p"), rather than SSR 96-7p, supplies the governing rule in this case, the ALJ's decision

3

having issued on August 26, 2016, *see* Record at 33.[3] Accordingly, I refer herein to SSR 16-3p, although there is no material difference between the two rulings for purposes of the instant appeal.[4]

Pursuant to SSR 16-3p, the factors that an ALJ is to consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms include (i) daily activities, (ii) "[t]he type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms[,]" and (iii) "[t]reatment, other than medication, an individual receives or has received for relief of pain or other symptoms[.]"  SSR 16-3p at 671.

### 1.  Activities of Daily Living

The ALJ concluded that the plaintiff's "activities of daily living and functioning belie the severity of the symptoms alleged[,]" explaining:

> For example, he testified he lived with his parents, managed finances, watched television, did stretching exercises, performed self-care, and rode in a car.  Exhibit 5E dated January 28, 2015, by the [plaintiff] indicated he lived in a house with family, watched television, read, did stretching exercises, walked, performed self-care with some difficulty, took medication independently, prepared simple meals, did small loads of laundry, went outside most days, rode in a car, went out alone, drove until recently, shopped, managed finances, talked on the phone, went out with a friend weekly, and could follow written/oral instructions. . . .  Exhibit 19F reflected he went hunting and fishing on occasion, read, watched television, enjoyed sitting by the river and watching nature, walked, did stretching exercises, attended appointments, and was dating a nurse and the [plaintiff] related he stayed functional. . . .  Thus, the [plaintiff]'s activities support a greater level of functioning than alleged.

Record at 29.

---

[3] SSR 16-3p took effect, superseding SSR 96-7p, on March 28, 2016.  *See* Social Security Ruling 16-3p Titles II And XVI: Evaluation Of Symptoms In Disability Claims, 82 Fed. Reg. 49462, 49462-63 (Oct. 25, 2017).
[4] The commissioner rescinded SSR 96-7p and replaced it with SSR 16-3p to "eliminate[e] the use of the term 'credibility'" and "clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, reprinted in *West's Social Security Reporting Service*, Rulings 1983-1991 (Supp. 2018), at 665.  The plaintiff makes no argument specific to this change.  *See* Statement of Errors at [6]-[9].  In addition, at oral argument, his counsel contended the same result obtains regardless of whether SSR 96-7p or 16-3p applies.

The plaintiff argues that he "never alleged that he was bed ridden" and that all of the foregoing evidence is consistent with his claims that he had difficulty walking, standing, or sitting and could go for brief walks or watch television. Statement of Errors at [7]. He adds that the fact that he could watch television, occasionally shop, and make a simple meal proves neither that he was capable of light-duty work nor that his activities of daily living were inconsistent with his allegations of his symptoms' severity. *See id.* at [8]. At oral argument, his counsel elaborated that the plaintiff's back condition by its nature waxes and wanes, as a result of which his functional capacity on a good day is hardly indicative of his functional capacity overall or of inconsistencies in his allegations.

Yet, the ALJ did not rely solely on the plaintiff's activities of daily living to demonstrate his capacity to perform a light level of work. She gave "substantial evidentiary weight" to the RFC opinion of agency nonexamining consultant Benjamin Weinberg, M.D., Record at 31, 78-79 – an assignment of weight that the plaintiff has not separately challenged, *see generally* Statement of Errors.[5] "[W]hile a claimant's activities of daily living, standing alone, do not constitute substantial evidence of a capacity to undertake full-time remunerative employment, an [ALJ] properly may take such activities into consideration in assessing . . . a claimant's allegations." *Rucker v. Colvin*, Civil No. 2:13-CV-218-DBH, 2014 WL 1870731, at *7 (D. Me. May 8, 2014) (citations omitted).

The ALJ also reasonably deemed the plaintiff's activities of daily living inconsistent with his allegations as she recounted them, which included that "he could stand for 5 to 10 minutes then his back started to act up; he could walk for 10 to 15 minutes on a normal street surface[;] . . . he

---

[5] The ALJ purported to give substantial evidentiary weight to the "opinions of the State agency physicians in Exhibit 3A[.]" Record at 31. However, there is only one opinion contained in Exhibit 3A, that of Dr. Weinberg. *See id.* at 73-82.

could sit for 30 to 45 minutes[;] . . . [h]e reported that he did not shop or do anything at his parents' house[;] [and] [h]e indicated that there were times when he had to stop and lie down the rest of the day." Record at 25.

## 2. Treatment History

The ALJ also found the plaintiff's "allegations of pain and limitations . . . not consistent with or supported by the overall record, which reflected improvement with treatment and noncompliance with treatment recommendations." *Id*. at 29. In his statement of errors, the plaintiff did not challenge this finding, which the ALJ buttressed with detailed references to the record. *See* Statement of Errors at [6]-[9]; Record at 28-29. However, in response to the commissioner's contention that this finding was supported by substantial evidence, *see* Opposition at 4-5, the plaintiff's counsel asserted at oral argument that the ALJ erroneously relied on the lack of a narcotics prescription for his client, which he represented is not the state of the art in treating chronic back pain given the current opioid overuse crisis. This argument is unavailing, both because the plaintiff's counsel identified no record evidence to support that proposition and because the ALJ catalogued other evidence, including the plaintiff's failure to complete physical therapy, in drawing negative inferences from his treatment history. *See* Record at 28-29.

## 3. Contradictory Statements and Facts

The ALJ deemed the plaintiff's allegations "undermined by contradictory statements and facts in the record[,]" among them, that (i) he "was inconsistent regarding the alleged onset date of disability in that he stated the flare of back and right leg pain was caused by reaching down at work then he attributed it to shoveling and at other times he denied any inciting event[,]" and (ii) "[w]hile [he] alleged right foot drop, records reflected he generally had a normal gait with no stumbling." *Id*. at 30.

6

The plaintiff contends that he testified that he occasionally stumbled and that the medical records support a diagnosis of right foot drop, and that he consistently reported to treating providers that he worked as a welder until December 17, 2013, when pain from a re-injury that he sustained became so severe that he was forced to stop work. *See* Statement of Errors at [8]-[9].

Although the plaintiff identifies support for his allegation of a right foot drop, the standard is whether substantial evidence supports an ALJ's decision, not a claimant's allegations. As the commissioner observes, *see* Opposition at 6, the record contains evidence of doctors' examinations that did not reveal a right foot drop and occasions on which the plaintiff denied that he had an overt right foot drop, *see* Record at 433, 442, 537, 544. That constituted substantial evidence in support of the ALJ's finding on this point.

The plaintiff argues that, while various treating providers indicated that his disabling back injury was work-related, shoveling-related, or not related to any precipitating event, his representations about his December 2013 flare-up were "remarkably consistent[,]" and, because "doctors are not stenographers" and do not all ask the same questions, there was "bound to be some discrepancy in the history as [the plaintiff went] from doctor to doctor, from year to year." Statement of Errors at [9]. The commissioner acknowledges that the plaintiff's "understanding of the precipitating event leading to his pain exacerbation could have evolved over time as he spoke with doctors and put matters in context." Opposition at 8. However, she correctly notes that this was only one among many identified inconsistencies. *See id.*; Record at 30.

In sum, even if the ALJ erred in finding inconsistencies in the plaintiff's explanation for the reason his back injury allegedly became disabling, her evaluation of his allegations of disabling symptoms readily survives the deferential standard of review that continues to apply following the adoption of SSR 16-3p, but for the use of the term "credibility." *See, e.g., Frustaglia v. Sec'y of*

*Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").

### B. Weight Given to Opinions of Treating, Examining Physicians

The plaintiff complains that the ALJ gave inadequate weight to the opinions of treating physician Dean Chamberlain, D.O., and examining physician Douglas M. Pavlak, M.D. *See* Statement of Errors at [9]-[10].[6] I find no error.

The ALJ acknowledged that Dr. Chamberlain completed "forms dated February 23, 2014, March 31, 2014, April 28, 2014, and July 8, 2014, which opined the [plaintiff] had no work capacity[,]" that Dr. Chamberlain "stated he could not determine if the impairment was expected to be permanent[,]" and that Dr. Chamberlain "then reported on September 9, 2014, and January 9, 2015, that the [plaintiff] had no work capacity and a permanent impairment." Record at 30. She noted, however, that these were not physical RFC assessments "but rather conclusory statements unsupported by the overall evidence of record such that these forms are given little weight." *Id*. at 30-31.

The plaintiff concedes that an opinion as to whether a claimant is disabled is never entitled to controlling weight. *See* Statement of Errors at [9]-[10].[7] However, he complains that, in

---

[6] In his statement of errors, the plaintiff described both Dr. Chamberlain and Dr. Pavlak as treating physicians. *See* Statement of Errors at [9]-[10]. However, at oral argument, his counsel conceded that Dr. Pavlak, who had examined the plaintiff twice for purposes of a workers' compensation claim, was an examining physician.

[7] Indeed, as the commissioner points out, *see* Opposition at 9, "an opinion that a claimant is disabled is an opinion on an issue reserved to the commissioner and, thus, entitled to no special significance even if offered by a treating source[,]" *Brown v. Berryhill*, No. 1:17-cv-00196-JAW, 2018 WL 1891572, at *4 (D. Me. Apr. 20, 2018) (rec. dec., *aff'd* May 9, 2018) (citing 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3)). "[T]he failure of an [ALJ] to adopt a treating medical source's opinion on an issue reserved to the commissioner cannot, standing alone, provide the basis for remand." *Id*. (citation and internal quotation marks omitted).

8

deeming Dr. Chamberlain's statements "conclusory," the ALJ failed to read them in conjunction with his detailed office notes of the same dates. *Id*. at [10].

This plaint is without merit. The ALJ summarized the medical evidence of record in detail, including the Chamberlain notes, deeming that evidence inconsistent with the plaintiff's allegations of disabling limitations. *See* Record at 25-28. She specifically noted that Dr. Chamberlain "advised the [plaintiff] to maintain normal day-to-day activities." *Id*. at 27.

The ALJ also acknowledged that, in an April 8, 2015, report, Dr. Pavlak indicated that the plaintiff "was unable to work and had not returned to his prior level of functioning[,]" and in a June 8, 2016, report, "Dr. Pav[l]ak stated the [plaintiff] met or at least equaled in severity or duration Listing 1.05 [Appendix 1 to C.F.R. Part 404, Subpart P (the "Listings")] as the [plaintiff] had pain, muscle spasm, and limitation in range of motion of the lumbar spine and appropriate radicular distribution of significant motor loss with muscle weakness and sensory loss." *Id*. at 31.[8]

However, she stated that "there is no evidence that . . . Dr. Pav[l]ak saw the [plaintiff] between the examination in April of 2015 and the assessment in June of 2016" and that she deemed his opinion inconsistent with the medical evidence as a whole and "in excess of [Dr. Pavlak's own] findings on the April of 2015 exam, which included slightly restricted lumbar range of motion with mild pain on end range but no pain behavior, negative straight leg raising, minimal lumbar tenderness, diminished pinprick sensation in the medial right calf/foot with otherwise intact sensation, 2+/4 deep tendon reflexes, and within normal strength." *Id*.

The plaintiff contends that Dr. Pavlak confirmed in April 2015 that he was "suffering from the 'expected sequelae of lumbar discectomy times 2 would (with?) significant multileveled disc

---

[8] Dr. Pavlak presumably meant to cite Listing 1.04, pertaining to disorders of the spine, rather than Listing 1.05, pertaining to amputation. *See* Listings 1.04, 1.05, Listings. However, nothing turns on the error.

disease" and that he was not able to work. Statement of Errors at [10] (quoting Record at 531) (errors in quotation corrected) (parenthetical in original).

However, he fails to explain how the ALJ's conclusion that the Pavlak opinion was at odds with the medical evidence of record, including the specific findings of Dr. Pavlak that she cited, was wrong. In turn, inconsistency with other medical evidence of record is a good reason to discount even the opinion of a treating source. *See, e.g., Campagna v. Berryhill*, No. 2:16-cv-00521-JDL, 2017 WL 5037463, at *4 (D. Me. Nov. 3, 2017) (rec. dec., *aff'd* Jan. 2, 2018) ("[L]ack of support and inconsistency with other substantial evidence of record are well-recognized bases for affording a treating source's medical opinion little or no weight.").

The plaintiff, accordingly, fails to demonstrate entitlement to remand based on the ALJ's handling of the Chamberlain and Pavlak opinions.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **AFFIRMED**.

Dated this 24th day of August, 2018.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge